HAHN v SARAH COVENTRY, INCORPORATED

Docket No. 43925. Submitted March 5, 1980, at Detroit.—Decided
    May 6, 1980. Leave to appeal applied for.

Ann E. Hahn developed cardiac arrythmia and claimed worker's
    compensation benefits from her employer, Sarah Coventry,
    Incorporated, and its insurer, Employers Mutual of Wausau.
    The hearing referee and the Worker's Compensation Appeal
    Board approved the payment of benefits for total disability.
    Defendants appeal by leave granted, alleging that a deposition
    of a psychiatrist was erroneously admitted into evidence be-
    cause the deposition had been taken without the plaintiff's
    having first furnished the defendants with a copy of the psychi-
    atrist's medical report as required by statute, that there was no
    evidence to support the finding that the plaintiff's employment
    had caused or aggravated the medical condition, and that the
    appeal board should have apportioned the benefits payable to
    the plaintiff. *Held:*

    1. Admission of the deposition was error because the failure
    of the plaintiff to supply the defendants with a copy of the
    medical report affected the defendants' ability to cross-examine
    the psychiatrist at the taking of the deposition. The error was
    harmless, however, because the defendants had an opportunity
    again to depose the psychiatrist or to subpoena him to appear
    as a witness at the hearing. Having done neither, the defen-
    dants have waived their right to cross-examine this witness.

    2. There was testimony to support a finding that the plain-
    tiff's condition was caused by the stresses of her job.

    3. The apportionment issue is not properly before the Court
    of Appeals, as it was not raised at the proceedings below.
    Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation § 633.
[2] 2 Am Jur 2d, Administrative Law § 645 *et seq.*
    82 Am Jur 2d, Workmen's Compensation § 630 *et seq.*
[3] 82 Am Jur 2d, Workmen's Compensation § 290 *et seq.*
[4] 82 Am Jur 2d, Workmen's Compensation § 534.
[5] 2 Am Jur 2d, Administrative Law § 625.

1. Workers' Compensation — Evidence — Physician's Reports — Statutes.

Admission into evidence of a psychiatrist's deposition in a worker's compensation hearing was error where the defendant was not furnished with a copy of the psychiatrist's medical report prior to the taking of the deposition; however, the error was harmless where the defendant had an opportunity to schedule another deposition before the hearing or to subpoena the psychiatrist to appear as a witness and failed to do so, thereby waiving the right to cross-examine the psychiatrist (MCL 418.385; MSA 17.237[385]).

2. Workers' Compensation — Appeal Board — Statutes.

Determinations of the Worker's Compensation Appeal Board are conclusive, in the absence of fraud, if there is substantial competent evidence to support them (MCL 418.861; MSA 17.237[861]).

3. Workers' Compensation — Illness or Disease — Work-Related Injury.

Worker's compensation benefits are not payable for an illness or disease unless the claimant's work has accelerated or aggravated the illness or disease or the work coupled with the illness or disease causes an injury.

4. Workers' Compensation — Causality — Evidence.

A worker's compensation claimant need establish causality only by a preponderance of the evidence.

5. Workers' Compensation — Appeal — Waiver of Issues.

Issues not raised before the hearing referee or before the Worker's Compensation Appeal Board are waived and may not be raised on appeal.

*Kelman, Loria, Downing, Schneider & Simpson,* for plaintiff.

*George E. Ganos,* for defendants.

Before: D. E. Holbrook, Jr., P.J., and R. M. Maher and Cynar, JJ.

Per Curiam. The defendants appeal by leave granted from a January 25, 1979, decision of the

Worker's Compensation Appeal Board (WCAB) affirming the April 26, 1976, decision of the hearing referee which granted the plaintiff worker's disability compensation benefits. The hearing referee found that plaintiff's occupationally-related stress precipitated the cardiac arrythmia which disabled her.

The plaintiff testified that she began working for Sarah Coventry in October of 1958 at the age of 25. At that time, she was in excellent health. Her original duties as a fashion sales director were to organize jewelry parties at which Sarah Coventry jewelry was sold. The plaintiff was paid on a strict commission basis. Four months later, the plaintiff was promoted to unit director, and in addition to her former duties had to bring new people into the system and train them to work as fashion sales directors. As a unit director, plaintiff was responsible for 15 people. In September of 1959 the plaintiff was advanced to branch manager and oversaw 120 people. In addition to her earlier duties, she also developed people to act as unit directors. She often worked 12-hour days. In 1961, she collapsed and was hospitalized for 8 to 10 days.

After an absence of a year and a half, the plaintiff returned to work for Sarah Coventry as a branch manager. In 1964, she was promoted to division manager, and was responsible for 250 to 300 people. The plaintiff was required to travel in the city and out of state. She began to have adverse heart reactions due to the fatigue and pressure of her job. In 1965, the plaintiff became a region manager, which meant increased sales volume requirements. She became an area manager in 1967, at which time she had charge of 500 people, and worked 16- to 18-hour days.

In 1972, the plaintiff moved up to the top area manager of the company, and in 1973 was pro-

moted to zone vice-president. In this job, the plaintiff was responsible for area managers and regions, branches, units, and the like. She was responsible for several states and 4,000-5,000 people, and continued to experience pressure and strain. Plaintiff stated that her home life was destroyed, and her marriage ended in divorce.

In 1967, the plaintiff experienced heart disorders and entered a hospital for treatment where heart monitoring was performed. The plaintiff said she experienced rapid, irregular heartbeats along with weight loss, loss of appetite, chest pains, weakness, and trouble in breathing. In October of 1973, the plaintiff testified that she collapsed at home while dictating a letter and was taken to a hospital. The plaintiff said that her heart was racing, that she could not walk and could barely talk. The plaintiff did not work after this time, and her condition has somewhat improved since then.

The deposition of Dr. Seymour Wilhelm was admitted into evidence. He had examined the plaintiff on April 12, 1968, and again on May 12, 1975. Dr. Wilhelm testified that plaintiff had episodes of rapid and irregular heartbeats, which can be brought on by stress. Dr. Wilhelm could find no physiological cause for these episodes and had no explanation for them aside from emotional stress. Dr. Wilhelm concluded that plaintiff's highly competitive work could aggravate and precipitate her arrythmia problem, and that she should not return to this type of work environment. Dr. Wilhelm said that recurrent episodes of arrythmia could lead to a "cardiac neurosis".

Dr. Robert Schneck, a board certified internist, examined the plaintiff on August 15, 1975. He concluded that Mrs. Hahn's attacks of rapid heart actions were unrelated to her occupation, and were not associated with any heart disease.

Over defense objections, the deposition of Dr. Bruce Danto, a board certified psychiatrist, was admitted into evidence. Dr. Danto examined Mrs. Hahn on August 18, 1975. Dr. Danto believed that there was a causal relationship between the plaintiff's work and her medical condition. It was his opinion that the plaintiff was totally disabled from working.

After the hearing referee had ruled in plaintiff's favor, the defendants sought to take additional testimony prior to review by the WCAB. The WCAB granted this request, and the deposition of Joel Dreyer, M.D., a psychiatrist, was taken. Dr. Dreyer examined Mrs. Hahn on March 25, 1975. It was his opinion that if the plaintiff took employment in a position involving stresses similar to her previous work she would experience further episodes of rapid and irregular heartbeat. Dr. Dreyer thought that plaintiff was capable of working in a situation which involved less pressure and speed than her previous position.

The first issue we consider in this appeal involves the admission into evidence of Dr. Bruce Danto's deposition despite the plaintiff's failure to comply with defendants' request for a copy of Dr. Danto's report, as required by MCL 418.385; MSA 17.237(385).

Dr. Danto examined the plaintiff on August 18, 1975. On August 28, 1975, the defendants sent a letter requesting a copy of Dr. Danto's report. The plaintiff's attorney replied by a letter dated September 5, 1975, stating that, "You will advise me what psychiatric [sic], if any, you intend to present, and I will be happy to exchange reports with you". The defendants' attorney acknowledged receipt of this letter.

Dr. Danto's deposition was scheduled for Sep-

tember 18, 1975. The defendants' attorney did not appear at the scheduled time. After waiting 10 minutes, plaintiff's attorney proceeded to take Dr. Danto's testimony. The defendants' attorney arrived approximately 20 minutes late. At that time, he objected to the taking of any testimony in view of plaintiff's failure to furnish a copy of Dr. Danto's medical report, and indicated he would be willing to reschedule the deposition if he was furnished with a copy of the report and given the opportunity to prepare for cross-examination. The defendants' attorney then left, and the plaintiff's attorney proceeded with the deposition. The plaintiff's attorney did send defendants a copy of Dr. Danto's medical report six days later, on September 24, 1975.

The hearing before the administrative law judge began on October 22, 1975. The hearing referee admitted the deposition into evidence despite defendants' objections, although he stated no reason for his ruling. The same issue was later raised before the WCAB. All five members concluded that plaintiff's failure to furnish a copy of the report did not exclude the introduction of depositional testimony where the notice, subpoena, and proper procedural due process requirements were met, and there was an opportunity for cross-examination at the taking of the deposition.

MCL 418.385; MSA 17.237(385) provides as follows:

"Sec. 385. After the employee has given notice of injury and from time to time thereafter during the continuance of his disability, if so requested by the employer or the carrier, he shall submit himself to an examination by a physician or surgeon authorized to practice medicine under the laws of the state, furnished and paid for by the employer or the carrier. *If an*

*examination relative to the injury is made, the employee or his attorney shall be furnished, within 15 days of a request, a complete and correct copy of the report of every such physical examination* relative to the injury performed by the physician making the examination on behalf of the employer or the carrier. The employee shall have the right to have a physician provided and paid for by himself present at the examination. If he refuses to submit himself for the examination, or in any way obstructs the same, his right to compensation shall be suspended and his compensation during the period of suspension may be forfeited. Any physician who makes or is present at any such examination may be required to testify under oath as to the results thereof. *If the employee has had other physical examinations relative to the injury but not at the request of the employer or the carrier, he shall furnish to the employer or the carrier a complete and correct copy of the report of each such physical examination, if so requested, within 15 days of the request. If such a request is made, the employee may not subsequently introduce into evidence a report of any physical examination not furnished to the employer or the carrier."* (Emphasis added.)

There are no decisions construing the requirements of § 385, making this an issue of first impression.

First of all, we conclude that a psychiatric examination comes within the scope of the statute, especially where the alleged disability involves mental stress rather than a physical injury.

We are of the opinion that the hearing referee and the WCAB erred in admitting Dr. Danto's depositional testimony. Clearly, the purpose of § 385 is to allow the opponent an opportunity to review the medical report prior to the taking of any depositions, in order to enable him to cross-examine the expert witness in an effective manner. If we penalize the plaintiff by excluding only

the unfurnished report, but allow the use of a deposition which is based largely on this report and where the defendant is at a clear disadvantage in his ability to cross-examine, we would undercut the purpose of the statute.

However, we are constrained to find that the error in the instant case was of the harmless variety. In *Greer v John E Green Plumbing & Heating Co*, 75 Mich App 451; 255 NW2d 17 (1977), the plaintiff sought compensation for a heart disability. The defendants deposed plaintiff's physician in January of 1973, but plaintiff's attorney failed to appear at the deposition. At the referee's hearing, which took place in January of 1974, plaintiff's attorney sought to quash this deposition, but the motion was denied. The Court upheld this ruling, finding that plaintiff had waived his right to cross-examine. The Court noted that the plaintiff had an adequate opportunity to seek another deposition before the trial or to subpoena the doctor as a witness.

In the case at bar, the record indicates that Dr. Danto's report was furnished to the defendants' attorney on September 24, 1975. The hearing began on October 22, 1975. The defendants had an opportunity to schedule a deposition prior to the hearing, or to subpoena Dr. Danto to appear as a witness at the hearing. Their failure to do so constitutes a waiver of their right to cross-examine the witness, and we must therefore reluctantly uphold the decision of the WCAB.

The defendants also allege that the WCAB erred in ordering the payment of continuing benefits to the plaintiff where there was no evidence to support the finding that the stressful nature of her employment had caused or aggravated the plaintiff's underlying medical condition.

The scope of review in worker's compensation cases is extremely limited under MCL 418.861; MSA 17.237(861). In the absence of fraud, determinations of the WCAB are conclusive, if there is substantial competent evidence to support them. *Eckman v Ex-Cell-O Corp,* 58 Mich App 94, 96; 226 NW2d 855 (1975).

The defendants contend that the recent Supreme Court decision in *Kostamo v Marquette Iron Mining Co,* 405 Mich 105; 274 NW2d 411 (1979), mandates reversal. In *Kostamo,* the Supreme Court considered the eligibility of five different claimants with heart disease who sought to recover under the Worker's Disability Compensation Act. The Supreme Court made the following statement concerning eligibility for benefits, 405 Mich at 116:

"The workers' compensation law does not provide compensation for a person afflicted by an illness or disease not caused or aggravated by his work or working conditions. Nor is a different result required because debility has progressed to the point where the worker cannot work without pain or injury. Accordingly, compensation cannot be awarded because the worker may suffer heart damage which would be work-related if he continued to work. Unless the work has accelerated or aggravated the illness, disease or deterioration and, thus, contributed to it, or the work, coupled with the illness, disease or deterioration, in fact causes an injury, compensation is not payable."

The *Kostamo* Court indicated that, in deciding whether the asserted stress caused the heart problems, the trier of fact need not rely solely on medical testimony, but is permitted to draw natural inferences from all the testimony, both lay and medical. The Court went on to say, 405 Mich at 135-136:

"A claimant need establish causality only by a preponderance of the evidence. The WCAB may conclude that the party who has the burden of proof has produced evidence which preponderates when it is persuaded, viewing all the evidence, circumstances and reasonable inferences, that the evidence and inferences which support the claim outweigh those which oppose it. Whether the evidence so persuades and therefore preponderates is a judgment confided to the WCAB with which a court may interfere only when convinced that there is no evidence to support that judgment."

In the case at bar, Dr. Wilhelm testified that plaintiff's condition was caused and aggravated by the stresses of her job. The hearing referee and the WCAB were free to disregard Dr. Schneck's depositional testimony to the effect that plaintiff's "paroxysmal tachycardia" was totally unrelated to the stresses of her job. We therefore find no basis for reversal of the WCAB's determination.

Defendants' final contention on appeal is that the WCAB was required to apportion benefits under MCL 418.431; MSA 17.237(431) where the plaintiff's employment was not the sole reason for her disability, but was only a contributing factor. Since that issue was not raised before the hearing referee or the WCAB, it is waived. *Hutchinson v Tambasco,* 309 Mich 597, 607; 16 NW2d 87 (1944), *Kolbas v American Boston Mining Co,* 275 Mich 616, 619; 267 NW 751 (1936), *Kushay v Sexton Dairy Co,* 394 Mich 69, 77; 228 NW2d 205 (1975).

Affirmed.