BONELLI v VOLKSWAGEN OF AMERICA, INC

Docket Nos. 91864, 91865. Submitted October 15, 1987, at Detroit. Decided February 17, 1988. Leave to appeal applied for.

J. B. Bonelli, who had contracted with the Amateur Hockey Association of the United States (AHAUS) for the exclusive print and poster rights to the United States hockey team which won a gold medal at the 1980 Olympics, brought an action in Oakland Circuit Court against Volkswagen of America, Inc. (VW), and James Neal Harvey Advertising, Inc. (JNHA). Plaintiff alleged that these defendants had tortiously interfered with his business relationship with AHAUS and had intentionally inflicted emotional distress by contracting with AHAUS for the free distribution of pictures of the hockey team in conjunction with an advertisement campaign for Volkswagen automobiles, thereby undercutting plaintiff's efforts to sell posters of the team at substantial profit. Plaintiff subsequently amended the complaint to add AHAUS as a defendant, alleging tortious interference with an advantageous business relationship, intentional infliction of emotional distress, breach of contract, fraud and

REFERENCES

Am Jur 2d, Continuance §§ 5-7.

Am Jur 2d, Contracts §§ 441-447.

Am Jur 2d, Damages §§ 171-178.

Am Jur 2d, Depositions and Discovery §§ 139, 140, 168, 174 *et seq.*; 181-185, 189.

Am Jur 2d, Foreign Corporations §§ 316 *et seq.*; 460 *et seq.*

Am Jur 2d, Fright, Shock, and Mental Disturbances §§ 4-7, 17.

Am Jur 2d, Interference §§ 3-21, 39, 50.

Am Jur 2d, Tort § 18.

Am Jur 2d, Judgments §§ 106 *et seq.*; 120, 142-148.

Am Jur 2d, Trial §§ 573 *et seq.*

Modern status of intentional infliction of mental distress as independent tort; "outrage". 38 ALR4th 998.

Recovery based on tortfeasor's profits in action for procuring breach of contract. 5 ALR4th 1276.

Comment Note.—Power of court sitting as trier of fact to dismiss at close of plaintiff's evidence, notwithstanding plaintiff has made out prima facie case. 55 ALR3d 272.

Amendment of pleading with respect to parties or their capacity as ground for continuance. 67 ALR2d 477.

intentional misrepresentation. The trial court, Frederick C. Ziem, J., directed a verdict in favor of defendants on the claim of intentional infliction of emotional distress. The jury subsequently returned a verdict in favor of plaintiff on his claim of tortious interference with an advantageous business relationship against vw and JNHA, but returned a verdict of no cause of action as to all claims against AHAUS. The trial court denied motions for judgment notwithstanding the verdict and for remittitur and entered a judgment consistent with the jury's verdict, setting damages at $1.6 million plus interest and costs. Vw and JNHA (hereafter defendants) appealed, raising several claims of error, and plaintiff cross-appealed, claiming that a directed verdict should not have been granted on the claim of intentional infliction of emotional distress.

The Court of Appeals *held:*

1. The trial court did not err in denying defendants' motion for judgment notwithstanding the verdict. The evidence presented, when viewed in the light most favorable to plaintiff, would have permitted reasonable jurors to conclude that all the elements of tortious interference with a business relationship were established.

2. The trial court did not abuse its discretion in denying the admission of deposition testimony of two JNHA employees, which was offered by defendants for use against AHAUS. The trial court properly ruled that, since AHAUS was not yet a party to the action at the time the depositions were taken, the depositions could not be used against AHAUS. Although the depositions may have been admissible for use against plaintiff, defendants failed to move for admission of the depositions on this basis.

3. Under the circumstances in this case, the trial court did not abuse its discretion in refusing to grant a continuance to enable defendants to present the live testimony of a witness whose deposition was not admitted as described above.

4. The trial court did not err in rejecting a nonstandard jury instruction requested by defendants. The requested instruction was unbalanced and slanted and therefore did not comply with court-rule requirements regarding instructions not covered by the Standard Jury Instructions.

5. JNHA's activities fell within the ambit of the Michigan long-arm statute and the trial court did not err in not dismissing plaintiff's action as to this defendant on a claim of lack of personal jurisdiction.

6. The award of damages was neither excessive nor speculative. The award was within the range of the evidence produced

at trial and is not shocking to the conscience, and plaintiff presented sufficient proofs to enable the jury to assess lost profits as a portion of damages.

7. Plaintiff failed to establish a prima facie case of intentional infliction of emotional distress against VW, JNHA or AHAUS, and the trial court's directed verdict on this claim was therefore proper.

Affirmed.

1. MOTIONS AND ORDERS — DIRECTED VERDICT — JUDGMENT NOTWITHSTANDING THE VERDICT — APPEAL.

The Court of Appeals, in reviewing a trial court's denial of a defendant's motion for a directed verdict or judgment notwithstanding the verdict, must view the testimony and all legitimate inferences that may be drawn therefrom in the light most favorable to the plaintiff and determine whether the evidence was sufficient to establish a prima facie case; if reasonable jurors could honestly have reached different conclusions, then the motion should have been denied since no court may substitute its judgment for that of the jury.

2. TORTS — INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONSHIP.

The basic elements which establish a prima facie tortious interference with a business relationship are: the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship or expectancy has been disrupted; one is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another.

3. TORTS — INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONSHIP.

A plaintiff who alleges tortious interference with a contractual or business relationship must prove the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the plaintiff's contractual rights or business relationship.

4. EVIDENCE — DEPOSITIONS — APPEAL.

Appellate review of a trial court's decision on the admissibility of

depositions is limited to a determination of whether the court abused its discretion.

5. Evidence — Depositions — Court Rules.

A trial court does not abuse its discretion in denying the admission of a deposition sought to be used against a party where the party was not present or represented at the time the deposition was taken or where the party had no reasonable notice of the deposition (MCR 2.308[A][1]).

6. Evidence — Admissibility — Multiple Parties.

Where evidence is inadmissible against one of the parties and admissible against the other, the party offering it must offer it against the party against whom it is admissible; if he does not do so, but offers it generally and the trial court sustains an objection, there is no error in exclusion (MRE 105).

7. Trial — Continuances.

Granting a continuance is within the discretion of the trial court.

8. Trial — Jury Instructions — Nonstandard Jury Instructions.

Additional instructions on applicable law not covered by the Standard Jury Instructions must be concise, understandable, conversational, unslanted, and nonargumentative (MCR 2.516[D][4]).

9. Courts — Long-Arm Jurisdiction — Foreign Corporations — Due Process.

Limited personal jurisdiction over a nonresident corporate defendant may be exercised by a court where the defendant has certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice; in each case, it must be shown that the defendant purposely availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws or that the defendant has purposely directed its activities at residents of the forum state and the litigation results from alleged injuries that arise out of, or relate to, those activities (MCL 600.715; MSA 27A.715).

10. Contracts — Breach of Contract — Damages — Lost Profits.

Lost profits resulting from a breach of contract are proper items of loss to be considered by a jury in determining damages; however, they must be subject to a reasonable degree of certainty and cannot be based solely on conjecture and speculation, although they need not be determined to a mathematical certainty.

11. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
   Four elements make up a prima facie claim of intentional inflic-
   tion of emotional distress: (1) extreme and outrageous conduct;
   (2) intent or recklessness; (3) causation; and (4) severe emo-
   tional distress.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton*
(by *John R. Secrest, Thomas E. Keenan* and *Janet
G. Callahan*), and *Gromek, Bendure & Thomas* (by
*Mark R. Bendure*), and *Ronald M. Abend, Inc.,* (by
*James D. Devereaux*), for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy,
Moore, Sills & Poling, P.C.* (by *Michael M. Hatha-
way* and *Robert D. Brignall*), and *Satterlee &
Stephens,* (by *Robert Callagy, Mark Fowler* and
*David Curran*), Attorneys of Counsel for defen-
dants Volkswagen of America, Inc., and James
Neal Harvey Advertising, Inc.

*Kerr, Russell & Weber* (by *Robert R. Florka*), for
Amateur Hockey Association of the United States.

Before: WAHLS, P.J., and SAWYER and C. W.
SIMON, JR.,* JJ.

PER CURIAM. This dispute concerns conflicting
claims to the right to sell or distribute posters of
the gold-medal-winning 1980 United States Olym-
pic Hockey Team. On January 21, 1986, an Oak-
land County jury returned a verdict in favor of
plaintiff, J. B. Bonelli, and against defendants
Volkswagen of America, Inc. (VW), and James Neal
Harvey Advertising, Inc. (JNHA), on a count of
tortious interference with an advantageous busi-
ness relationship based on their interference with
plaintiff's exclusive rights to sell posters of the
hockey team. A judgment was entered against VW

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and JNHA for $1.6 million plus prejudgment interest and costs. A verdict of no cause of action, however, was returned in favor of defendant Amateur Hockey Association of the United States (AHAUS) on counts of tortious interference with a business relationship, intentional misrepresentation, breach of contract and fraud. After VW and JNHA's motion for new trial or judgment notwithstanding the verdict was denied by the Oakland Circuit Court on March 26, 1986, they filed this appeal as of right, claiming that the trial court erred by: (1) denying their request for judgment notwithstanding the verdict on plaintiff's claim of tortious interference with an advantageous business relationship; (2) excluding from evidence the deposition testimony of two of their witnesses on the basis that the depositions had been taken before AHAUS was joined as a codefendant; (3) refusing to give a requested jury instruction explaining New York law as it applied to their contract with AHAUS; (4) refusing to dismiss the claims against JNHA based on lack of personal jurisdiction; and (5) refusing to set aside or reduce the damage award, which they alleged to be speculative and excessive. Plaintiff filed a cross-appeal challenging the directed verdict entered in favor of defendants by the trial court on the claim of intentional infliction of emotional distress. We affirm the trial court's decisions in toto.

### FACTS

On February 22 and 24, 1980, the United States Olympic Hockey Team, an underdog in the competition, defeated teams from the Soviet Union and Finland to win the gold medal for hockey at the Winter Olympic Games held at Lake Placid, New York. The marketing potential of the hockey team

for product advertising purposes was immediately recognized by advertisers in the United States—a country whose morale was then diminished to some extent by the lengthy Iran-hostage crisis. The financially strapped AHAUS, which owned the exclusive rights to the advertising and promotional activities of the hockey team, including its signs, logos and symbols, also recognized that the team's victory had produced a unique fund-raising opportunity.

Plaintiff was one of those persons who hoped to capitalize on the excitement surrounding the hockey team's victory. On Monday, March 3, 1980, he contacted Harold Trumble, the executive director of AHAUS, and by March 7, 1980, according to plaintiff, he and Trumble had come to a verbal understanding that plaintiff would purchase the exclusive rights to sell posters of the team in exchange for payment of $100,000 plus ten percent of the gross sales receipts. On March 13, 1980, plaintiff and Trumble signed contracts which provided, among other things, that plaintiff was to have the "exclusive print and poster rights to the 1980 U. S. Hockey Team" and the "exclusive license to use the Names and Logos in connection with the sale and marketing of prints and posters." On the same date, plaintiff also signed a letter of agreement in which he agreed to purchase advertisements in the upcoming twelve consecutive monthly issues of a magazine published by AHAUS. Consistent with the prior verbal understanding between plaintiff and Trumble, the contracts required plaintiff to pay $100,000 plus ten percent of the gross receipts from the sale of "prints and posters."[1]

---

[1] The exclusive print-and-poster-rights contract required plaintiff to pay $25,000 plus ten percent of the gross receipts from the sale of "prints and posters"; the exclusive-license contract required plaintiff

Unbeknownst to plaintiff, at the same time the terms of his contracts were being firmed up Trumble and other AHAUS representatives were negotiating with personnel from VW and its advertising agent, JNHA, about the use of the hockey team in an advertisement campaign promoting the sale of VW vehicles. On Monday, February 25, 1980, the day after the hockey team's victory over the team representing Finland, Fred Campbell, the president of the sports marketing firm which had been secured in October, 1979, as AHAUS's nonexclusive agent to obtain corporate sponsors, contacted James Neal Harvey, chairman of the board of JNHA, and left a phone message encouraging JNHA to consider using the hockey team as part of an advertising campaign for one of its clients. At that time, JNHA was the advertising agent for one of VW's vehicles, the Vanagon. A tentative agreement was reached, under the terms of which VW would pay $50,000 to AHAUS for use of the hockey team to promote VW's Vanagon. The men met shortly thereafter, apparently on February 27, 1980, to discuss the project, but the actual content of the advertising package proposed by Harvey at this initial meeting was disputed at trial. According to JNHA attorney Stephen Froling, who was not personally present at the meeting, Campbell and other AHAUS representatives were made aware that VW intended to support its use of the hockey team in television commercials with the free distribution of team photographs at local VW automobile dealerships. Campbell and Trumble, on the other hand, testified that there had been no discussion of a poster or team-photo giveaway at the meeting.

to pay $25,000; and the advertisement-purchase letter agreement required plaintiff to pay $50,000. Of the total amount of $100,000 paid by plaintiff, $1,000 came from his own resources and $99,000 derived from investors.

According to Campbell, a second meeting was held two days after the first, at which Campbell showed John Slavin, the advertising manager for vw, some proposed layouts for television commercials and commercial print material, but no mention was made of a poster giveaway. Campbell further testified that Slavin was so impressed with the advertising package that he decided to use the hockey team to promote the entire vw line of automobiles rather than just the Vanagon, thus causing a doubling of the fee payable to AHAUS from $50,000 to $100,000.

On February 29, 1980, an article appeared in the New York Times stating that vw had "pulled off the advertising coup of the season by signing up the United States Olympic Hockey Team." According to the article, "[p]rint ads and television commercials for the whole line of Volkswagen products will offer color posters of the team." A similar story appeared in a March 3, 1980, article in Adweek. The Adweek article explained that vw would be reinforcing its television, newspaper and magazine advertisements with an "offer of a giveaway poster featuring a color photo of the team members." Trumble, AHAUS outside counsel Donald Parson, and plaintiff all testified that they had not read either article when published and did not become aware of their contents until, at the very earliest, several weeks later. Campbell acknowledged at trial that he had read the New York Times article on February 29, 1980, but that at the time he dismissed the comment about a color poster giveaway as the product of an overzealous public relations person who threw in the idea as a "possibility." Trumble testified that Campbell never mentioned the article to him.

Also on February 29, 1980, Trumble arrived in

New York and spoke with Campbell and Scott Weeker, a JNHA executive in charge of the VW account. According to Trumble, the two men informed him that during the following few days a ticker-tape parade would be held for the hockey team and a television commercial involving the team would be made, but not that a poster giveaway program was planned. On Tuesday, March 4, 1980, a meeting took place in Harvey's New York office with James Harvey, JNHA attorney Stephen Froling, JNHA account executive Scott Weeker, AHAUS agent Fred Campbell, and AHAUS executive director Harold Trumble. Trumble and Campbell testified that a poster giveaway was not mentioned to them at this meeting.

Later in the day on March 4, 1980, at a hockey rink in New Jersey, JNHA personnel were filming a television commercial involving the hockey team. Trumble testified that while watching the filming, JNHA executive Scott Weeker asked him for a team picture. When asked what kind of picture he needed, Trumble said that Weeker responded, "Just a team picture that we can give out to the people that come into the showrooms, to look at Volkswagens." Trumble asserted that he was not told how many of the pictures would be distributed or that VW intended to use the pictures as part of a poster, stating, "If they had mentioned the poster, it would have been a red flag to me," since during that time period he was negotiating with other people regarding the rights for the sale of posters of the hockey team.

At trial, JNHA attorney Stephen Froling testified that neither VW nor JNHA had heard of the ongoing negotiations or the contract between plaintiff and AHAUS until a week after plaintiff's contract was executed. However, the deposition testimony of Chip Prosnit, an ex-JNHA employee who wrote

and produced the vw television commercial with
the hockey team, indicated that he had first heard
of the "problem with J. B. Bonelli" on Tuesday,
the second day of shooting the commercial, which
apparently was March 4, 1980. Moreover, Prosnit
stated that at a meeting held on the Tuesday or
Wednesday of the following week, which would
have been on March 11 or 12, 1980, he was "told
outside of the meeting by Weeker and perhaps
Harvey that there may be a problem" regarding
the use of the words "team poster" in the proposed
television commercial. According to Prosnit, he
was told to change the words "team poster" to
"team photo" because "someone else might have
the rights to the poster . . . we would have to call
it a team photo."

On March 12, 1980, there was another meeting
in Harvey's office, at which were present Harvey,
Weeker, Prosnit, Froling and Trumble. The trial
testimony was conflicting regarding whether
Trumble was shown a sample poster which had
been produced by vw or whether the thirty-second
television commercial prepared by Prosnit, which
included an oral invitation to viewers to pick up a
free team photo at a vw dealership, was shown
with or without its audio accompaniment. At this
meeting, prior to his receiving payment from vw,
Trumble signed a release form, under the terms of
which AHAUS consented to the use of its "name,
logo, trademarks . . . and other identifying sym-
bols ('Marks') to advertise and promote the prod-
ucts of [vw] by means of a single television com-
mercial." The release also gave vw the "rights to
use the Marks and print and commercial materials
supporting the television campaign," as well as
"sole control over the production and content of
advertising and promotion," with AHAUS retaining
no right "to inspect or approve the finished prod-

uct or the media in which the finished product is used." AHAUS also warranted that it had not, and would not, enter into any agreement with a third party which would interfere with the free exercise of vw's rights under the release. Although Harvey and Trumble signed the release form on March 12, 1980, vw executive John Slavin did not sign it until the following day.

As noted earlier, plaintiff's contracts with AHAUS for the exclusive print and poster rights to the 1980 U. S. Hockey Team and the exclusive license to use the names and logos in connection with the sale and marketing of such prints and photos were signed on March 13, 1980.

On March 19, 1980, plaintiff learned for the first time that vw intended to give away free posters of the hockey team. He met with Harvey and Weeker in Harvey's office and was shown a copy of the vw poster, which he described at trial as being substantially identical to the team poster he had arranged to produce. Thereafter, AHAUS attorney Donald Parson wrote a letter to JNHA advising that agency not to distribute its posters because vw's rights under the release agreement did not include the right to give away team posters. A March 24, 1980, meeting held in Harvey's office failed to resolve the dispute. On March 15, 1980, Trumble offered to release plaintiff from his contracts and to return all monies paid to AHAUS up to that point, but plaintiff refused this offer and on April 1, 1980, paid his remaining balance due.[2]

On November 5, 1980, plaintiff filed suit against vw and JNHA in Oakland Circuit Court, alleging tortious interference with an advantageous business relationship and intentional infliction of emotional distress. In the fall of 1981, deposition testi-

---

[2] Plaintiff had already paid $1,000, and thus tendered the remaining $99,000 due under the contracts on April 1, 1980.

mony was taken from both Harvey and Weeker at the request of VW and JNHA. Subsequently, in March, 1983, plaintiff amended his complaint to add AHAUS as a codefendant, alleging tortious interference with an advantageous business relationship, intentional infliction of emotional distress, breach of contract, fraud and intentional misrepresentation.[3] The circuit court made the rulings and entered the judgments recited at the beginning of this opinion, and defendants VW and JNHA's appeal and plaintiff's cross-appeal ensued. We will address the issues seriatim.

## ISSUES

### I

First, defendants VW and JNHA contend that the trial court erred by denying their motion for judgment notwithstanding the verdict with respect to plaintiff's claim of tortious interference with an advantageous business relationship. We disagree.

In reviewing a trial court's denial of a defendant's motion for judgment notwithstanding the verdict, this Court must view the testimony, and all legitimate inferences that may be drawn therefrom, in the light most favorable to the plaintiff and determine whether the evidence was sufficient to establish a prima facie case. *Matras v Amoco Oil Co,* 424 Mich 675, 681-682; 385 NW2d 586 (1986). If reasonable jurors could honestly have reached different conclusions, then the motion should have been denied and the case should have been decided by the jury, since no court has the

[3] Prior to trial, the complaint against AHAUS was dismissed for lack of personal jurisdiction. That ruling, however, was overturned by this Court. *Bonelli v Volkswagen of America, Inc,* unpublished opinion per curiam of the Court of Appeals, decided August 13, 1985 (Docket No. 78904).

authority under such a circumstance to substitute its judgment for that of the jury. *Id.*

The elements of the tort of interference with an advantageous business relationship were set forth by this Court in *Northern Plumbing & Heating, Inc v Henderson Bros, Inc,* 83 Mich App 84, 93; 268 NW2d 296 (1978), lv den 405 Mich 845 (1979), quoting 45 Am Jur 2d, Interference, § 50, p 322:

> "The basic elements which establish a prima facie [showing of] tortious interference with a business relationship are the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another."

This recitation of the elements of tortious interference with an advantageous business relationship has been relied upon by this Court. See, e.g., *Trepel v Pontiac Osteopathic Hospital,* 135 Mich App 361, 374; 354 NW2d 341 (1984), lv den 422 Mich 853 (1985), and *Woody v Tamer,* 158 Mich App 764, 776-777; 405 NW2d 213 (1987).[4] Defen-

---

[4] The parties in this case at times seem to treat the torts of interference with an advantageous business relationship and interference with an existing contract as synonymous. These torts, however, are distinct. The elements of the latter tort are: (1) the existence of a contract; (2) a breach of the contract; and (3) instigation, without justification, of the breach by the alleged tortfeasor. *Woody v Tamer,* 158 Mich App 764, 773-774; 405 NW2d 213 (1987). Regarding the tort

dants argue that plaintiff's proofs are fatally deficient as to each of the elements of this tort.[5] We discern no such deficiencies.

First, the proofs presented regarding the existence of a business relationship or expectancy between plaintiff and AHAUS for the exclusive rights to distribute posters of the 1980 U. S. Hockey Team were sufficient to establish the initial element of the tort. Plaintiff and AHAUS were contractual parties for the purpose of mutual pecuniary gain. As this Court has observed, "there can be no more reasonable expectation of business advantage than that based upon a valid contract." *Woody, supra,* p 778. Moreover, we conclude below, in section v, that plaintiff's damages caused by the alleged interference with his contractual relationship were proven with reasonable certainty sufficient to permit plaintiff's claim to go to the jury. Clearly, the parties' contract evidenced a valid business relationship which was created for the obvious business advantage of making money.

Second, plaintiff presented sufficient evidence from which reasonable jurors could infer that before VW and JNHA launched their national advertising campaign, they knew that plaintiff had purchased the exclusive rights to distribute posters of the hockey team, but nevertheless chose to offer free posters of the team as part of their campaign. Viewed in a light most favorable to plaintiff, the deposition of Chip Prosnit, the JNHA employee who wrote and produced the VW commercial advertis-

of interference with an advantageous relationship or expectancy, "an advantageous *contractual* relationship is sufficient, but not necessary, to state a cause of action." *Id.,* p 777.

[5] We note that, despite plaintiff's contention to the contrary, defendants do raise the issue of the insufficiency of proofs regarding the tort of interference with an advantageous business relationship. In arguing their motion for judgment notwithstanding the verdict, VW and JNHA challenged the sufficiency of plaintiff's proofs as to each of the elements of the tort claim against them.

ing free posters of the hockey team, indicates that JNHA knew about the "problem with J. B. Bonelli" early on in the negotiating process between plaintiff and AHAUS. In addition, not only did Prosnit suggest that JNHA knew about the ongoing negotiations with plaintiff, but he indicated that at least one JNHA executive ordered him to change the words offering a free "team poster" in the television commercial to "team photo" since "somebody else might have the rights to the poster [so] . . . we would have to call it a team photo." JNHA attorney Stephen Froling conceded that this word change was made, and Prosnit understood the change to be a purely semantic one, i.e., one not requiring any alteration of the item VW actually intended to give away. It is also clear that VW and JNHA were made aware of plaintiff's exclusive rights to distribute posters of the hockey team no later than the March 21, 1980, warning letter from AHAUS attorney Donald Parson, and certainly no later than when telegrams were sent by plaintiff himself on March 24, 1980. Nevertheless, defendants refused to cancel their upcoming national magazine ads and their yet-to-be-aired national television commercials.

Third, plaintiff presented sufficient evidence from which reasonable jurors could infer that defendants had performed an intentional interference inducing or causing a breach or termination of plaintiff's business relationship or expectancy. To fullfil this element, a plaintiff must show not only that the defendant acted intentionally, but further that he acted improperly or without justification. *Christner v Anderson, Nietzke & Co, PC,* 156 Mich App 330, 348; 401 NW2d 641 (1986); *Trepel, supra,* p 374; *Feldman v Green,* 138 Mich App 360, 369-379; 360 NW2d 881 (1984), lv den 422

Mich 961 (1985); 4 Restatement Torts, 2d, § 767, pp 26-27. As recently stated by this Court:

> Under the current state of law, one who alleges tortious interference with a contractual relationship must prove the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights of another. [Citations omitted. *Christner, supra,* pp 348-349.]

Thus, where a defendant's actions were not per se wrongful and were "motivated by legitimate personal and business reasons" rather than by a desire to interfere with the plaintiff's contractual or business relationship, this Court has refused to impose liability. *Christner, supra,* pp 347-349.

We have little difficulty in concluding that plaintiff presented sufficient evidence from which reasonable jurors could conclude that vw and jnha, through the distribution of their 120,000 free posters in conjunction with a national advertising scheme including television, newspaper and magazine commercials, intentionally and improperly interfered with plaintiff's exclusive right to sell substantially identical posters. See 4 Restatement Torts, 2d, §§ 766A, 767, pp 19, 26-27. Plaintiff testified that defendant's actions caused investors to abandon their involvement with his enterprise upon learning that vw was giving away the same kind of poster plaintiff hoped to sell for profit, and that vw's free-poster campaign generally rendered his poster an unattractive buy for both major retailers and consumers. These consequences should have surprised no one. And while the societal interest in maintaining a competitive, free enterprise system fosters legitimate dickering, outbidding, and even outmaneuvering among individuals and businesses, *Meyering v Russell,* 53 Mich

App 695, 710; 220 NW2d 121 (1974) (partial concurrence by O'HARA, J.); 4 Restatement Torts, 2d, § 767, pp 26-27, in this case, we perceive no justification for defendants' behavior on the basis of fair competition. Indeed, the evidence indicated that VW and plaintiff were not openly and honestly competing for the same rights. Rather, there was substantial evidence to support the inference that, instead of trying merely to outbid plaintiff, VW and JNHA chose instead to appropriate to themselves, without payment and under the authority of generalized and vague language in a release form, the rights which they knew had previously been purchased by plaintiff. Moreover, there was substantial evidence to support the views that AHAUS never intended to give VW the right to distribute posters of the hockey team and that the release by AHAUS did not grant VW such a right. Ultimately, we are at a loss to discern any praiseworthy societal interest which would be furthered by permitting a defendant to unilaterally and knowingly appropriate to itself the benefits of exclusive contractual rights enjoyed by another.

Finally, we also conclude that plaintiff presented sufficient proof of damages resulting from the invasion by VW and JNHA of his business relationship with AHAUS. A full discussion regarding plaintiff's damages appears in section V of this opinion.

II

Second, defendants VW and JNHA argue that the trial court erred by excluding from evidence the deposition testimony of James Harvey and Scott Weeker merely because their depositions were taken prior to the time AHAUS was added as a codefendant in the case. We disagree.

Plaintiff's original complaint against VW and

JNHA was filed in November, 1980. At the request of VW and JNHA, the video deposition testimony of JNHA executives Harvey and Weeker was taken in September, 1981. In March, 1983, plaintiff amended his complaint to add AHAUS as codefendant.

On January 13 and 14, 1986, at about the midpoint of the trial, AHAUS objected to the introduction into evidence of the Harvey and Weeker depositions. AHAUS based its objection on MCR 2.308(A)(1), which provides that deposition testimony may be used against a party at trial only if that party "was present or represented at the taking of the deposition or had reasonable notice of it." AHAUS argued that, although Harvey and Weeker's names appeared on the witness list it had received, it had no notice prior to the first day of trial that VW and JNHA intended to use the deposition testimony of the two witnesses rather than obtain their live testimony.

When asked by the trial judge if VW and JNHA intended to use the deposition testimony against AHAUS, their attorney's response was, "Well, of course." Later, their attorney stated that if the depositions were admitted, he intended to use them "not necessarily just against Mr. Florka [AHAUS's attorney], or just against the plaintiff, it's my side of the case." We note that although the circuit court sustained the objections of AHAUS, and thus refused to admit the two depositions into evidence, it permitted the rearrangement of witnesses to provide VW and JNHA additional time to procure both witnesses. The attorney for these defendants asserted that he would do his best to find Harvey and Weeker, but that he did not in fact know where they were. On Thursday, January 16, 1986, after all other trial testimony had been completed, VW and JNHA again attempted, unsuc-

cessfully, to introduce the depositions into evidence. They then informed the trial court that Harvey was available to testify on "either Monday, Wednesday or Thursday, but not Tuesday," of the following week. The trial court denied this request for a continuance and ordered vw and JNHA to have the witness in court by the next day, January 17, 1986, or forego the opportunity to present his testimony. Vw and JNHA then asserted that at that time they were unable to procure Harvey by the following day in order to testify.

Appellate review of a trial court's decision on the admissibility of depositions is limited to a determination of whether the court abused its discretion. *Valley Nat'l Bank of Arizona v Kline,* 108 Mich App 133, 140-141; 310 NW2d 301 (1981). The burden of establishing admissibility rests on the party seeking admission. *Id.,* p 141.

We do not believe that the trial court abused its discretion by refusing to admit the Harvey and Weeker depositions as evidence against AHAUS since no substantial reason was proffered for the court to stray from the clear dictates of MCR 2.308(A)(1). That court rule "is premised on the basic due process consideration that before testimony should be used against any party, that party must be given an opportunity to cross-examine the witness." 2 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), p 279; see also *Hoover v Switlik Parachute Co,* 663 F2d 964 (CA 9, 1981) (deposition taken before a third party was joined in the action not admissible at trial against that third party).

This Court's decisions in *Cooper v Chrysler Corp,* 125 Mich App 811, 818-819; 336 NW2d 877 (1983), *Greer v John E Green Plumbing & Heating Co,* 75 Mich App 451, 453; 255 NW2d 17 (1977), rem on other grounds 406 Mich 896 (1979), and *Hahn v*

*Sarah Coventry, Inc,* 97 Mich App 389, 393-396; 296 NW2d 36 (1980), lv den 411 Mich 886 (1981), do not require a different result. In *Cooper,* relying on *Greer* and *Hahn,* this Court stated:

> [A]n agency does not violate a party's rights to due process by admitting a deposition for which that party had no notice and was not present if that party had an opportunity to schedule another deposition prior to the administrative hearing or to subpoena the deponent as a witness at the hearing and failed to do so. Such a failure constitutes a waiver of the right to cross-examine. *[Cooper, supra,* p 819.]

*Cooper, Greer* and *Hahn* were all workers' compensation cases and are inapplicable to the case at bar.

First, as observed in *Holford v General Motors Corp,* 116 Mich App 488, 490; 323 NW2d 454 (1982), lv den 417 Mich 950 (1983), "[g]enerally, workers' compensation appeal boards are not required to adhere to the same technical rules that are applicable to jury trials." The *Cooper* Court similarly noted that GCR 1963, 302.4, the predecessor of MCR 2.308(A)(1), was applicable to such administrative proceedings to the extent required to protect the due process rights of a party to cross-examine adverse witnesses. *Cooper, supra,* pp 818-819. Second, *Cooper, Greer* and *Hahn* are factually distinguishable. In *Cooper,* the objecting party had received a copy of the witness' deposition prior to the hearing; stated twice at the hearing: "I don't want any cross-examination"; and had an opportunity to subpoena the deponent as a witness, but failed to do so. In *Greer,* plaintiff's attorney failed to appear at a scheduled deposition and declined subsequently to avail himself of the opportunity to seek another deposition

or to subpoena the deponent as a witness. In *Hahn,* the deposition of a psychiatrist was found to have been erroneously admitted into evidence by the hearing referee because the plaintiff had failed to follow an applicable statutory requirement to supply the defendants with a copy of a medical report. Nevertheless, this Court found the error to have been harmless since the defendants knew of the absent report and had an opportunity to schedule a deposition prior to the hearing or to subpoena the deponent to appear as a witness at the hearing. In the instant case, however, AHAUS was not informed of the intent of VW and JNHA to use the Harvey and Weeker depositions until the first day of trial. In this regard, it is interesting that, consistent with the case law examined here, the trial court stated that it would have ruled admissible the depositions had AHAUS been given reasonable notice before trial of VW's intention to introduce them into evidence. Third, Michigan courts have repeatedly held that a party does not waive its objection to the admissibility of deposition evidence by waiting until trial to assert it. *Banaszkiewicz v Baun,* 359 Mich 109, 116; 101 NW2d 306 (1960); *Moore v Lederle Laboratories,* 42 Mich App 689, 694-695; 202 NW2d 481 (1972), aff'd 392 Mich 289; 220 NW2d 400 (1974); MCR 2.308(B).

Defendants VW and JNHA also argue that, even if the trial court properly excluded the depositions as evidence against AHAUS, it should have admitted them as evidence against plaintiff. There is little doubt that the depositions of Harvey and Weeker would have provided VW and JNHA with important ammunition to rebut plaintiff's claims against them. The deposition testimony was not merely cumulative, as plaintiff suggests, since Harvey and Weeker were able to provide firsthand testimony of events and meetings about which

other witnesses, such as JNHA attorney Stephen Froling, had little or no personal knowledge.

It is true that testimony which is competent for one purpose should not generally be excluded because it is incompetent for another purpose. *Palmiter v Monroe Co Bd of Rd Comm'rs,* 149 Mich App 678, 686; 387 NW2d 388 (1986), lv den 428 Mich 859 (1987). Moreover, when evidence is admissible against one party but not another, the trial court may admit the evidence with an instruction to the jury that it should consider the evidence only as it applies to the party against whom it is properly admissible. McCormick, Evidence (3d ed), § 59, p 152. Once evidence is admitted, the burden is on the party desiring a limiting instruction to request it. MRE 105. In this case, however, these principles do not aid defendants. Even though VW and JNHA indicated that they desired to use the depositions against both plaintiff and AHAUS, once the trial court refused to admit the depositions into evidence for that purpose, defendants were obliged to request admission of the documents for use against plaintiff only. This, they failed to do. As stated by another court:

> Where evidence is inadmissible against one of the parties and admissible against the other, the party offering it must offer it against the party against whom it is admissible. If he does not do so, but offers it generally and the court sustains an objection, there is no error in exclusion. [*Luvual v Henke & Pillot, Division of Kroger Co,* 366 SW2d 831, 839 (Tex Civ App, 1963).]

It cannot successfully be asserted by defendants that the trial court erred in deciding the question of admissibility of the depositions within the context framed by defendants' own counsel.

Nor do we believe that the trial court abused its

discretion in refusing to grant vw and JNHA a continuance to allow them more time to procure Harvey as a witness. *Moldovan v Allis Chalmers Mfg Co,* 83 Mich App 373, 382; 268 NW2d 656 (1978), lv den 406 Mich 916 (1979), cert den 444 US 1034; 100 S Ct 707; 62 L Ed 2d 671 (1980); MCR 2.503(C). Defendants knew as early as January 6, 1986, the first day of trial, that AHAUS objected to the admission of the two depositions. After excluding the depositions on January 13, 1986, the trial court rearranged the order of the witnesses to allow defendants several additional days to procure Harvey as a witness. On Thursday, January 16, 1986, the date of defendants' request for a continuance, the presentation of proofs was complete except for the possible testimony of Harvey. Granting the continuance may have seriously undermined the jury's ability to evaluate the evidence in the case. As of January 16, 1980, the date of defendants' request for a continuance, the trial was already ten days old. Granting defendants' request would have required the trial court to grant at least a six-day adjournment at a crucial stage of the trial (the court was closed on Monday, January 20, 1986, for Martin Luther King, Jr., Day, and the next day that Harvey was available to testify was Wednesday, January 22, 1986). Such an inordinately long delay would have seriously compromised the jury's ability to remember the nine days of testimony it had already been required to absorb. The trial court wisely refused to grant the continuance.

III

Third, defendants vw and JNHA argue that the

trial court erred in refusing their request to give the jury an instruction explaining New York law as it applied to the contract between vw and AHAUS. We disagree.

Our review of the record discloses that defendants objected without explanation to the trial court's refusal to give the following jury instruction:

> I instruct you, ladies and gentlemen of the jury, as to the standard that you must apply in interpreting the March 12 agreement between AHAUS and VW/JNHA, and in deciding whether or not that contract permitted vw to distribute their team posters. That standard can be stated as follows: "Any use which may be reasonably said to fall within the medium as described in the [agreement]" is permissible. *Bartsch v Metro Goldwyn Mayer, Inc,* 391 F2d 150 (CA 2), cert den 393 US 826 (1968).

Under MCR 2.516(C), a party may assign as error the failure to give an instruction by making an objection on the record before the jury retires to consider the verdict and by "stating specifically the matter to which the party objects and the grounds for the objection." By failing to comply with this court rule, defendants have failed to properly preserve the issue for appeal. Even if we were to review this issue, however, we would find no error.

In the present case, New York law applied regarding the proper interpretation of the VW-AHAUS contract because the last act necessary for making that contract a binding agreement between the parties occurred in New York. *Rubin v Gallagher,* 294 Mich 124, 128; 292 NW 584 (1940); *Wells v 10-*

*X Mfg Co,* 609 F2d 248, 253 (CA 6, 1979).[6] However, the instruction requested by defendants did not fulfill the requirement of MCR 2.516(D)(4) that instructions not covered by the Standard Jury Instructions "must be concise, understandable, conversational, unslanted, and nonargumentative." See *Jones v Porretta,* 428 Mich 132, 143; 405 NW2d 863 (1987). The proposed instruction stresses the objective meaning of the words in the contract but totally ignores other crucial factors to be considered in interpreting the contract, such as the intent of the parties and the custom and usage in the trade. *Deverho Construction Co v State,* 94 Misc 2d 1053; 407 NYS2d 399 (1978); *HNC Realty Co v Bay View Towers Apts, Inc,* 64 AD2d 417; 409 NYS2d 774 (1978). The trial court did not err in refusing to give such an unbalanced and slanted charge to the jury.

IV

Fourth, defendant JNHA argues that the trial court erred in refusing to dismiss the claims against it based on a lack of personal jurisdiction. We disagree.

Before trial, JNHA moved for accelerated judgment on the ground that the trial court lacked personal jurisdiction. The trial court denied JNHA's motion in an order dated January 28, 1981. The pertinent requirements for personal jurisdiction over a corporation are set forth in Michigan's long-arm statute:

---

[6] Even though New York contract law controlled the interpretation of the VW-AHAUS contract, Michigan tort law controlled the determination of the elements of the tort of intentional interference with a business relationship since Michigan was the site of the alleged injury and of plaintiff's residence, no reason to displace Michigan law was shown, and no unfairness to the parties would result from the application of Michigan law. See Reese, *Depecage: A common phenomenon in choice of law,* 73 Colum L R 58, 59-60 (1973); *Olmstead v Anderson,* 428 Mich 1, 4-5, n 3; 400 NW2d 292 (1987).

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

* * *

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

* * *

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant. [MCL 600.715; MSA 27A.715.]

This statute was intended to give Michigan courts the full extent of power possible to gain personal jurisdiction over nonresident defendants as is consistent with the principles of due process. *Kriko v Allstate Ins Co,* 137 Mich App 528, 531; 357 NW2d 882 (1984). To exercise limited personal jurisdiction over a nonresident defendant, due process requires only that the defendant have certain minimum contacts with the state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co v Washington,* 326 US 310; 66 S Ct 154; 90 L Ed 95; 161 ALR 1057 (1945); *Khalaf v Bankers & Shippers Ins Co,* 404 Mich 134, 146; 273 NW2d 811 (1978). This minimum-contacts requirement is satisfied if the nonresident defendant purposely availed itself of the privilege of conducting its activities within the forum state, thus invoking the benefits and protections of the state's laws. *World-Wide Volkswagen Corp v Woodson,* 444 US

286; 100 S Ct 559; 62 L Ed 2d 490 (1980); *Hapner v Rolf Brauchli, Inc,* 404 Mich 160, 168-169; 273 NW2d 822 (1978), reh den 406 Mich 1103 (1979). The minimum-contacts requirement is also satisfied if the defendant has purposely directed its activities at residents of the forum state and the litigation results from alleged injuries that arise out of, or relate to, those activities. *Burger King Corp v Rudzewicz,* 471 US 462; 105 S Ct 2174; 85 L Ed 2d 528 (1985); *Keeton v Hustler Magazine, Inc,* 465 US 770; 104 S Ct 1473; 79 L Ed 2d 790 (1984). See *Witbeck v Bill Cody's Ranch Inn,* 428 Mich 659; 411 NW2d 439 (1987).

We harbor little doubt in this case that JNHA's activities fell within the ambit of the Michigan long-arm statute. First, JNHA admitted that its advertising campaign was national in scope and not limited to any particular regional market. Second, at the direction of JNHA, the advertisements for the poster offer were run in many nationally distributed magazines which reached the Michigan market (e.g., Business Week, US News & World Report, Sports Illustrated, Time, Newsweek, and New York Times). Third, evidence at trial indicated that JNHA targeted the Detroit market by arranging for VW's television commercials to be shown at various times on Channel 2 (CBS) and Channel 4 (NBC) in Detroit during March and April of 1980. Fourth, it was in part JNHA's decision that the posters should be distributed through Michigan VW dealerships as was evidenced by the fact that JNHA arranged for the magazine and television advertisements which were run in the Michigan area and by the fact that it was JNHA which provided the printer with the dealership addresses where the posters were to be sent. It was the poster distribution, in conjunction with the advertising campaign, which, as

plaintiff alleged, convinced his investors to abandon him and which ultimately spoiled his market for the sale of posters. Even if the advertising services which JNHA contracted to be performed in Michigan were not technically performed by JNHA, it was at its direction that the posters were furnished to local vw dealers in Michigan. Thus, it was the very advertising services which JNHA purposely directed to be performed in Michigan which caused the tortious injury to plaintiff.

v

Fifth, defendants vw and JNHA contend that the trial court erred in refusing to set aside or reduce the damage award rendered in plaintiff's favor, asserting that that award was excessive and based on speculative damages. We disagree.

For a plaintiff to be entitled to damages for lost profits, the losses must be subject to a reasonable degree of certainty and cannot be based solely on mere conjecture or speculation; however, mathematical certainty is not required, and even where lost profits are difficult to calculate and are speculative to some degree, they are still allowed as a loss item. *Lorenz Supply Co v American Standard, Inc,* 100 Mich App 600, 612; 300 NW2d 335 (1980), aff'd 419 Mich 610; 358 NW2d 845 (1984). The type of uncertainty which will bar recovery of damages is "uncertainty as to the fact of the damage and not as to its amount . . . [since] where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery." *Wolverine Upholstery Co v Ammerman,* 1 Mich App 235, 244; 135 NW2d 572 (1965), quoting 15 Am Jur, Damages, § 23, pp 414-416. As early as 1863, the Supreme Court clarified that

[t]he law does not require impossibilities; and can

not, therefore, require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages, than in respect to any other branch of the cause. Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages can not be estimated with certainty, or only a part of them can be so ascertained, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit. [*Allison v Chandler,* 11 Mich 542, 554-555 (1863), quoted with approval in *Muskegon Agency, Inc v General Telephone Co of Mich,* 350 Mich 41, 50-51; 85 NW2d 170 (1957).]

At trial, Fred Campbell, president of the sports marketing firm which acted as the nonexclusive agent for obtaining corporate sponsors for AHAUS; Michael Brausen, the president of a corporation which specializes in the marketing of sports and business promotional items, particularly posters and calendars; and plaintiff all discussed to some extent the issue of damages suffered by plaintiff as a result of the conduct of VW and JNHA.

Brausen, who possessed many years of experience with sports promotional programs, testified that the marketing potential of a poster of the 1980 Olympic Hockey Team was "phenomenal" because of the excitement generated by the team's victory and the national scope of the team's appeal. He estimated that sales of anywhere from three to twenty million of plaintiff's posters could reasonably be anticipated, and that the profit margin per poster would have been one dollar or higher. Campbell estimated that the potential

sales of plaintiff's posters would have reached in the "middle six figures" during the first few months after the team's victory, with possibly more sales thereafter. Plaintiff testified that based on the marketing studies he had obtained he could have sold seven million posters. All three men also opined that vw's poster giveaway program made plaintiff's poster an unattractive buy for consumers since the desire to purchase the poster would have waned after a substantially similar poster was advertised as a free item by vw. Plaintiff also explained that once the vw poster giveaway program became widely advertised, his major investors deserted him, thus seriously delaying the completion of his venture and depriving him of sales during the crucial high demand period immediately after the team won its gold medal.

We believe that plaintiff established his losses sufficiently to allow the issue to go to the jury. Doubts as to the certainty of the damages could properly have been resolved against vw and JNHA since, as the wrongdoers, the risk of uncertainty was cast upon them, not plaintiff, who was the injured party. *Lorenz Supply Co, supra,* p 612. We conclude that the jury's award was within the range of the evidence produced at trial and is not shocking to the conscience. *Strach v St John Hospital Corp,* 160 Mich App 251, 284-285; 408 NW2d 441 (1987). Accordingly, we find no error in the trial court's refusal to set aside or reduce the jury's damage award in this case in response to defendants' motions for remittitur and new trial under MCR 2.611(A) and (E).

VI

Finally, plaintiff contends, as cross-appellant, that the trial court erred in directing a verdict in

favor of VW, JNHA and AHAUS on the claim of intentional infliction of emotional distress. We disagree.

In reviewing a trial court's denial of a defendant's motion for directed verdict, this Court must view the testimony, and all legitimate inferences that may be drawn therefrom, in the light most favorable to the plaintiff and determine whether the evidence is sufficient to establish a prima facie case. *Matras v Amoco Oil Co,* 424 Mich 675, 681-682; 385 NW2d 586 (1986). If reasonable jurors could honestly have reached different conclusions, then the motion should have been denied and the case should have been decided by the jury, since no court has the authority under such a circumstance to substitute its judgment for that of the jury. *Id.; Dickerson v Nichols,* 161 Mich App 103, 107; 409 NW2d 741 (1987).[7]

Although the Supreme Court has not formally adopted the modern tort of intentional infliction of emotional distress into this state's jurisprudence as a separate theory of recovery, *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 597; 374 NW2d 905 (1985), it nevertheless has identified the four elements comprising a prima facie claim: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Id.,* p 602. The Court derived these elements from 1 Restatement, Torts, 2d, § 46, pp 71-72, which states:

§ 46. Outrageous Conduct Causing Severe Emotional Distress
    (1) One who by extreme and outrageous conduct

---

[7] The standards of review for denials of motions for directed verdict and judgment notwithstanding the verdict are identical. *Matras v Amoco Oil Co,* 424 Mich 675, 681-682; 385 NW2d 586 (1986). Thus, the same standard of review is applicable in subsections I and VI in the portion of this opinion addressing the issues raised on appeal.

intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

In discussing the first element, extreme and outrageous conduct, the *Roberts* Court quoted with agreement the following comment from 1 Restatement, Torts, 2d, § 46, comment d, pp 72-73:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" [*Roberts, supra,* p 603.]

See also *Deitz v Wometco,* 160 Mich App 367, 381; 407 NW2d 649 (1987), *Margita v Diamond Mortgage Corp,* 159 Mich App 181, 188; 406 NW2d 268 (1987), and *Early Detection v New York Life Ins Co,* 157 Mich App 618, 625-626; 403 NW2d 830 (1986).

At best, the evidence in the present case indicated that vw and JNHA distributed posters of the 1980 U. S. Hockey Team even though they knew that plaintiff had the exclusive rights to distribute such posters and their contract with AHAUS did not give them the right to such distribution. Viewing the evidence against AHAUS in a light most favorable to plaintiff, it indicates that AHAUS was double-dealing by giving the impression to vw and JNHA that they would be permitted to distribute posters —even though AHAUS knew that it had sold plaintiff the exclusive rights to distribute the posters. We feel that this behavior by defendants falls far

short of being extreme and outrageous for purposes of the tort of intentional infliction of emotional distress because it does not, we believe, go beyond all bounds of decency so as to be regarded as atrocious and utterly intolerable.[8] This Court has allowed attempts at recovery under the aegis of this novel tort only in the most egregious of cases.[9]

Moreover, plaintiff failed to present sufficient evidence of severe emotional distress in support of his claim to avoid a directed verdict. This Court, in *Dickerson v Nichols, supra,* pp 107-108, has commented on this element of the tort of intentional infliction of emotional distress as follows:

> Comment j of the Restatement states that emotional distress "includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." It concludes that "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proven; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress existed." Further, comment k states that, while severe emotional distress is normally

[8] Regarding plaintiff's claim for intentional infliction of emotional distress against AHAUS, we also note that in *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 603-604; 374 NW2d 905 (1985), the Supreme Court, citing *Hart v Ludwig,* 347 Mich 559; 79 NW2d 895 (1956), emphasized that, "in a contractual setting, a tort action must rest on a breach of duty distinct from contract."

[9] See, e.g., *Rosenberg v Rosenberg Bros Special Account,* 134 Mich App 342; 351 NW2d 563 (1984) (widow browbeaten by brother-in-law so that she would sell her interest in deceased husband's partnership), and *Ledsinger v Burmeister,* 114 Mich App 12; 318 NW2d 558 (1982) (racial insults hurled at plaintiffs as defendant ejected them from his place of business).

accompanied by bodily harm, bodily harm is not required if the enormity of the outrage carries with it the conviction that there has been severe emotional distress. 1 Restatement Torts, 2d, § 46, Comments j and k, pp 77-78. [See also *Roberts, supra,* pp 608-609.]

In this case, plaintiff testified that he was "shocked . . . surprised, and upset" due to defendant's conduct. When asked to describe the mental anguish he suffered as a result of the actions of defendants, plaintiff responded:

> I had negotiated a contract having three attorneys from three different areas of expertise reviewing the contract. They had two attorneys reviewing their contract. I had negotiated with their executive director. I talked with their in-house counsel about it. I had talked to marketing experts who indicated the quality, seven million posters plus, [sic] was the market out there. I had $250,000 lined up, to do a program. We were on our way from the standpoint that we had production people, graphics people, we were in a very, very good position, until this giveaway situation hit. It was just absolutely devastating. It would be something, I guess, like if you had been doing a good job at the office, and you showed up one day, and you are expecting a promotion, and you were told you were fired. I mean that's about how it felt, I guess.

Plaintiff's feelings of extreme disappointment, understandable though they may be, do not rise to the level of severe emotional distress in support of his tort claim. Plaintiff made no mention of severe depression, substantial psychological trauma, or even minor physical consequences. Thus, the harm alleged fell far short of making a threshold showing of the requisite emotional distress. *Hall v Pizza*

*Hut of America, Inc,* 153 Mich App 609, 617; 396
NW2d 809 (1986).

Accordingly, we find no error in the trial court's
grant of directed verdict in favor of defendants on
plaintiff's claim for intentional infliction of emo-
tional distress.

### CONCLUSION

We conclude that the trial court did not err in
denying a motion of VW and JNHA for a judgment
notwithstanding the verdict with respect to plain-
tiff's claim of tortious interference with an advan-
tageous business relationship; excluding from evi-
dence the depositions of James Harvey and Scott
Weeker; refusing the request of VW and JNHA to
give a proffered jury instruction regarding New
York law as it applied to the interpretation of the
contract between VW and AHAUS; refusing to dis-
miss the claims against JNHA on the basis of the
lack of personal jurisdiction; refusing to set aside
or reduce the damage award rendered by the jury
in plaintiff's favor; and granting a motion of defen-
dants for a directed verdict against plaintiff on his
claim for intentional infliction of emotional dis-
tress.

Affirmed.