RUBSAM CORP. v. GENERAL MOTORS CORP.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PATENTS—LICENSE AGREEMENTS.

In action for damages for alleged breach of license agreement to pay royalties on inventions and improvements under four patents, in which the Supreme Court remanded the case for determination of the claimed use of the second, third and fourth patents, the "claimed use" for determination was use under the license agreement.

2. PATENTS—LICENSE AGREEMENT—PRIOR ART—FINDINGS OF COURT.

In action for damages for alleged breach of license agreement to pay royalties on inventions and improvements, evidence sustained finding of trial court that defendant's use of devices for centering of demountable rims was a use of prior art rather than use of plaintiff's patents.

3. SAME—USE UNDER A CONTRACT A QUESTION OF FACT.

The question of use or nonuse of a patent under a contract or in an action for infringement is a question of fact and not of law.

4. SAME—USE UNDER CONTRACT—EVIDENCE.

In action for damages for alleged breach of license agreement to pay royalties on inventions and improvements, finding that defendant's use of nonreversible feature for demountable rim for automobile wheels was neither expressly nor impliedly under the license agreement was supported by previous infringement litigation in which it was shown that the patent lacked novelty and did not involve invention and fact that defendant had refused to elect to operate under such patent; hence defendant could not be said to be bound to pay royalties for use of such device under the terms of the license agreement.

5. SAME—CONSTRUCTION OF LICENSE AGREEMENT AS AN OPTION.

An agreement licensing the manufacture of demountable rim wheels for automobiles, incorporating inventions in designated

As to discharge of unilateral contracts by tender of performance and renunciation, see 2 Restatement, Contracts, § 415.

On benefits tortiously acquired in interference with trade names, profits a prendre and similar interests, see Restatement, Restitution, § 136.

patents and any improvements thereon as described in patents or patent rights which might be issued to licensors, may be viewed as an option to licensee to make use of licensor's inventions if it elected to do so by acknowledging the patents and paying royalties but, if it did not so elect and used such patented inventions anyway, it was subject to the same liabilities as an outsider for any unauthorized use.

6. SAME—LICENSES—ESTOPPEL—CONSTRUCTION BASED UPON PRIOR ART—INFRINGEMENT.

While under a license agreement a licensee would be estopped to deny the validity of a patent issued the licensor, it would not be estopped to show that, although it followed licensor's patents in its constructions, such constructions were based upon prior art or that it declined the use of the patents and preferred to take its chances upon liability as an infringer if licensor could establish validity of the patents and use thereof by licensee.

7. SAME—ROYALTIES—LICENSES—UNPATENTABLE DEVICES.

In action for damages for alleged breach of licensing agreement to manufacture nonreversible demountable rim wheel construction for which plaintiff held patents and to pay royalties therefor, where defendant licensee refused to elect to use devices when tendered by licensor and device was an obvious and unpatentable one, licensee could not be required to pay royalties.

8. APPEAL AND ERROR—FINDING OF COURT—PREPONDERANCE OF EVIDENCE.

Trial court's finding that there was no use of patents under license agreement upon which action for damages for breach was brought *held*, not against the preponderance of the evidence.

Appeal from Jackson; Hartrick (George B.), J., presiding. Submitted April 12, 1940. (Docket No. 31, Calendar No. 41,012.) Decided June 3, 1940.

Action by Rubsam Corporation, a Delaware Corporation, against General Motors Corporation, a Delaware Corporation, for damages for breach of a license agreement. Judgment for defendant. Plaintiff appeals. Affirmed.

*Whiting & Kleinstiver* (*Harness, Dickey & Pierce,* of counsel), for plaintiff.

*Milburn & Semmes (Prewitt Semmes, Drury W. Cooper,* and *C. Blake Townsend,* of counsel), for defendant.

MCALLISTER, J.   This is an action for damages for the alleged breach of a license agreement to pay royalties on inventions and improvements relating to demountable rim wheel construction.   Four patents were originally involved.   In *Rubsam Corp.* v. *General Motors Corp.,* 281 Mich. 691, it was decided that there had been no use by defendant of patent 1.   The case was thereafter remanded to circuit court for determination of whether patents 2, 3, and 4 had been used by defendant.   On trial, the lower court entered judgment for no cause of action on the finding that there had been no use by defendant of the patents under the license agreement.   Plaintiff appeals.

At the outset we are confronted by the question of the meaning and extent of the order of this court remanding the case.   It is contended by plaintiff that the only question before the trial court was whether defendant had made use of patents 2, 3, and 4.   Defendant maintains that the issue before the court was whether there had been a use of these patents *under the license agreement.*   When the case was previously before this court, there was a subsequent modification made in the opinion and decision.   Plaintiff, by motion, had called the attention of the court to the fact that, although the trial court had determined the question of use of patent 1, there had been no determination of the use of the other patents, and asked for a rehearing.   In its application for rehearing, plaintiff pointed out that the circuit court had not ruled upon whether "defendant had adopted the patents 2, 3 and 4 *under license*" and had not decided the question of "use *under license* of patents 2, 3 and 4;" that "the following questions as to patents

2, 3 and 4 (which were not passed upon by the trial court), are then presented and must necessarily be decided: (1) Did defendant adopt and acknowledge patents 2, 3 and 4, as improvements described in further patent or patents issued rights (*sic*—patents or patent rights issued) to plaintiff, and (2) did defendant use the same *under license*." In its opinion on motion for rehearing, this court remanded the cause to the circuit court "for determination of the claimed use of the second, third and fourth patents." *Rubsam Corp.* v. *General Motors Corp.*, 281 Mich. 716. The "claimed use," referred to in the above opinion, was the use set forth as one of the questions properly to be decided in plaintiff's application for rehearing, and was use *under the license agreement*. This was the only question with regard to use of the patents that was properly before the circuit court in the instant case.

The granting clause of the license agreement entered into between the plaintiff and defendant is as follows:

"Licensors hereby grant to licensee a license to manufacture or to have manufactured for it, wheels incorporating the invention or inventions as set forth in Patent No. 1,395,362 above referred to, and/or any and all improvements thereon, as described in any further patents or patent rights which may be issued to or acquired by licensors, always excepting any and/or all rights under Patent No. 1,403,439 to Mott, and which licensee may elect to acknowledge as such and use within the United States, and to sell or export the same as equipment on vehicles or replacements or service equipment therefor, subject to the conditions as hereinafter specified."

The proposition before us on review is whether defendant made use of patents 2, 3, and 4 under the license agreement. In this regard, the trial court held

that defendant's constructions were based upon a prior art and that, therefore, plaintiff could not sustain its claim of use by defendant of its patents.

Plaintiff's contentions may be briefly summarized in the following statement: that patents 2 and 3 consisted of a vehicle wheel, provided with a demountable tire-carrying rim, and a metallic channel-shaped felly. The felly was adapted to engage or carry the demountable rim. This demountable rim was provided with arcuate indentations arranged circumferentially around it and adapted to engage the periphery of the outer flange of the channel-shaped fixed rim in order to support and center the demountable rim on the felly or fixed rim of the wheel.

Defendant admits the use of a similar construction, but only for the purpose of employing such indentations to center, but not support, the demountable rim on the fixed rim.

A detailed description of the inventions and their purposes has been made in previous cases. *Rubsam Corp.* v. *General Motors Corp.,* 57 Fed. (2d) 581; *General Motors Corp.* v. *Rubsam Corp.* (C. C. A.), 65 Fed. (2d) 217; and it is unnecessary in this case to repeat at length what has already been recited.

Devices for the centering of demountable rims had been previously employed in other inventions. The Baker patent, No. 1,095,953, as early as 1914, employed studs on the rim for the purpose of centering it on the fixed wheel. According to that patent, it was provided that the rim or felly band be provided with fixed metallic studs or projections to properly center the demountable rim upon the wheel when it was placed thereon and to support the several arcs of the rim. It was stated as follows:

"To properly center the rim upon the wheel when it is first placed thereon and to support the several arcs of the rim between the widely separated clamp-

ing devices I employ a structure or structures by which the rim and the wheel periphery are placed substantially in metallic contact at points intermediate of the several clamping devices, yet not so tightly as to prevent the easy mounting and demounting of the rim. I prefer to accomplish this effect by providing the rim or the felly band with fixed metallic studs or projections."

The Harbridge patent, No. 1,165,096, of 1915 made use of a tire rim pressed inward at spaced intervals to contact the outer periphery of the felly for the purpose of centering the tire rim upon the wheel body. The patent states:

"Heretofore, it has been the practice to secure plates or studs either on the band or on the rim, or both, to provide bearings for the rim against flexure of the rim between the wedge lugs when the rim is on the wheel. The present invention dispenses with the necessity of these plates by *indenting the band* * * * to provide bearings for the inner face of the rim and by indenting the rim. * * * These indented portions, besides avoiding the necessity of securing studs or plates to the band or rim, avoid the necessity of drilling the band or rim for attachment of the studs or pivots for the plates. * * *

"Claim 4. The combination with a wheel body having a metallic band thereon, of a tire rim of greater diameter than the periphery of the band to leave a space therebetween, the rim having inwardly extending indented bearing portions for the band spaced from one another and disposed adjacent one side of the band, and devices independently of said bearing portions for securing the rim on the band."

The Manternach patent, No. 1,336,531, of 1920 also had lugs attached to the rim for properly seating it upon the felly.

With these centering devices already patented years before plaintiff's patents were even applied for,

we are of the opinion that the evidence sustained the finding of the trial court that defendant's use of the devices was a use of prior art, rather than a use of plaintiff's patents. *Westinghouse Electric & Manfg. Co.* v. *Formica Insulation Co.*, 266 U. S. 342 (45 Sup. Ct. 117).

*Gonser* v. *Leland Detroit Manfg. Co.*, 293 Mich. 196, was a suit for royalties and specific performance of a contract to assign improvements on a meat tenderizer. The plaintiff had invented a device for tenderizing meat, and had licensed it to defendant, together with any and all improvements which either party might make thereon. Defendant constructed a machine, similar in some respects to plaintiff's, which accomplished the same purpose. Plaintiff, claiming defendant's machine was an improvement upon his own, sought specific performance of the contract for assignment. The Court said:

"The main question concerns the construction to be given the contractual expression 'improvements and modifications of said invention.' Did the contract grant to plaintiff every device that defendant might conceive in the art in general, or is this language to be given a more limited scope? Defendant claims that its new machine is for the most part copied from the prior art, with possibly some new feature on which it is seeking letters patent, and that the contract does not deprive it of the right which it would otherwise have with the rest of the world to partake of the public domain; plaintiff contends, as the trial court found, that 'defendant undertook to develop a market for a rather special device, and had built up somewhat of a trade through the use of the Gonser patent, and the fruits of such business development was contemplated by the parties to be a valuable right which Gonser had a right to preserve and which the defendant agreed to regard as his own property.' We think this conclusion is erroneous. The tender-

izing of meat by rollers was not a new art. There were other devices on the market. There was no agreement by defendant not to go into the same line of business before the termination of the contract or not to use old processes open to the public or new ones constituting new inventions; it agreed to regard as plaintiff's property only improvements 'of said invention.' The trial court's holdings are not in accord with the language of the contract and the decided cases interpreting similar contracts. * * *

"We hold, then, that the trial court was in error in construing the contract before us now as contemplating any machine that defendant might produce which would compete with the very limited market built through the use of the Gonser patent. The terms of the contract do not preclude defendant from entering the somewhat competitive field of manufacture of meat tenderizing machines, *nor do we think the contract bars defendant from making use of methods in the public domain of the prior art,* or gives plaintiff the right to a new invention which is different from and in no way infringes on the old invention."

The question of use or nonuse of a patent under a contract or in an action for infringement is a question of fact and not of law. *United States* v. *Esnault-Pelterie,* 299 U. S. 201 (57 Sup. Ct. 159). We are of the opinion that the determination by the trial court that defendant did not make use of patents 2 and 3 but relied in their construction upon prior art is sustained by the evidence.

With regard to so-called patent 4, the trial court held that defendant's use thereof was under prior art. This patent was heretofore held to lack invention and to be invalid, in an action for infringement brought by plaintiff in the United States district court for the eastern district of Michigan; and no appeal was taken from such determination. In this regard, plaintiff

sought, among other claims of invention, to patent a device for a nonreversible rim by the use of a stud projecting inwardly on the base of the demountable rim and a notch on the felly adapted to accommodate the stud. This device lacked novelty and, in the language of the district court, "this device, once necessity for nonreversibility presents itself, is perfectly obvious and does not involve invention." According to the agreement between the parties, plaintiff granted defendant a license to manufacture wheels incorporating his first invention and for any and all improvements thereon, as described in any further patents and patent rights which might be issued to or acquired by the plaintiff, and which the defendant might elect to acknowledge as such and use. Defendant denies that it ever elected to acknowledge or use the device as set forth in patent 4. Plaintiff claims that under the opinion of this court it is not obliged to show that defendant elected to use the nonreversibility device because of the fact that in the opinion remanding the previous case, it was held necessary only to show use by the defendant and not use under the license agreement. We have already passed upon this contention. Use under the license agreement must be shown. The evidence does not persuade us that there ever was use, express or implied, under the agreement. In its bill of complaint in the infringement suit, plaintiff alleged that pursuant to the license agreement it requested defendant to elect whether it desired to operate under patents 2, 3, and 4 as improvements, or patent 1; and that the defendant refused to elect to do so. Plaintiff further alleged that defendant, without license, infringed the patents, including patent 4. In its answer, defendant denied the validity of the patent and in no manner relied upon the right to use under the license. Although the Federal suit did not amount to an election

of remedies between an infringement suit and an action under the license agreement, nevertheless the sworn bill of complaint and the answer of defendant are of some evidential value in regard to the attitude and understanding of the parties in reference to the issue before us. It would appear that, if plaintiff claimed any right to hold defendant under a license agreement, it would not have sued defendant as an infringer; and that, if defendant intended to avail itself of the license agreement, a defense relying upon the agreement would have negatived any recovery by plaintiff for infringement. When patents 2 and 3 were tendered by plaintiff to defendant for the election to use the same under the license agreement, defendant refused them on the ground that they were not inventions. When patent 4 was likewise tendered, plaintiff, in writing, also refused use of such patent.

It was determined in *Rubsam Corp.* v. *General Motors Corp.,* 281 Mich. 691, that defendant had never made use of patent 1. We have agreed with the trial court that defendant did not make use of patents 2 and 3, and that its constructions were based upon prior art. The nonreversibility device in patent 4 lacked invention; and defendant could not be said to be bound to pay royalties for use of such device under the terms of license. The pertinent provisions of the license agreement in this regard are:

"Licensors hereby grant to licensee a license to manufacture * * * wheels incorporating the invention or inventions * * * above referred to, and/or any and all improvements thereon as described in any further patents or patent rights which may be issued to * * * licensors."

The license agreement may be viewed as an option to defendant to make use of plaintiff's inventions. If the defendant availed itself of the option, it would

elect to acknowledge the patents and use them, agreeing to pay therefor certain stipulated amounts. If defendant did not elect to use the patents under the license agreement, but, nevertheless, did actually use them, it would be subject to a suit for infringement of the patent. In effect, then, the license agreement gave the defendant the opportunity to elect to use the patents, on the payment of royalties. But if it did not so elect, it was subject to the same liabilities as an outsider for any unauthorized use. Both plaintiff and defendant relied upon this stipulation, that before the license agreement could become effective with regard to patents 2, 3, and 4, defendant was obliged so to elect, and that any other use by defendant would be that of an infringer. It would appear that the previous infringement suit was brought against defendant on the theory that it did not so elect, that the license agreement was, therefore, not in effect, and the defendant was liable as an infringer. While, under the license agreement, defendant would be estopped from attacking the patents as invalid, nevertheless, it would not be estopped to show that, although it followed plaintiff's patents in its constructions, such constructions were, in fact, based upon prior art; and, in any event, the defense could be made that it declined the use of the patents and preferred to take its chances upon liability as an infringer, if plaintiff could establish the validity of the patents and use thereof by defendant.

Defendant never used any of the patents in the license agreement. The nonreversibility device in patent 4 was not an invention. Defendant never elected to use such a device under the license, and, on the contrary, refused to elect to use it when plaintiff tendered it. Because defendant did not avail itself of the use of any patents under the license agreement, it cannot be held to pay royalties for the use of an

obvious and unpatentable device which it used without any relation to any of the patents included in the license, and without any election on its part so to do. The question of defendant's use of the patents or improvements under the license agreement is one of fact. *Motor Wheel Corp.* v. *Rubsam Corp.* (C. C. A.), 92 Fed. (2d) 129. The finding of the trial court that there was no use of the patents under the license agreement is not against the preponderance of the evidence.

Judgment affirmed, with costs to defendant.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, and WIEST, JJ., concurred. BUTZEL, J., did not sit.