NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0778n.06
Filed: September 7, 2005
File Name: 05a0778n.06
Filed: September 7, 2005

**Nos. 04-1247 & 04-1310**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| VIA THE WEB DESIGNS, L.L.C., doing business as Via the Web Designs; THE INTERNET ADVANTAGE; SHERRY HALE, doing business as Sherry Hale, doing business as FEM2, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| SHERRY HALE, individually | ) ) | |
| Plaintiff-Appellant, Cross-Appellee, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| BEAUTICONTROL COSMETICS, INC., doing business as BeautiControl, Inc., a Delaware Corporation; TUPPERWARE U.S., INC., a Delaware Corporation, | ) ) ) ) ) | WESTERN DISTRICT OF MICHIGAN |
| Defendants-Appellees, Cross-Appellants. | ) ) | |

**Before: Boggs, Chief Judge; Ryan and Rogers, Circuit Judges.**

**Rogers, Circuit Judge.** Sherry Hale appeals the district court's decision to grant summary judgment in favor of BeautiControl Cosmetics, Inc. on her and her company's claims of tortious interference. Ms. Hale argues that BeautiControl sought to drive business from a website she developed, beauti.com, to a similar website developed by BeautiControl, and that in doing so

BeautiControl tortiously interfered both with Ms. Hale's contracts and with her prospective business relationships with subscribers. Ms. Hale also appeals the district court's denial of her motion to alter or amend the judgment. In that motion, Ms. Hale principally argued that the district court's decision to grant summary judgment prior to the completion of discovery required the district court to reconsider the grant of summary judgment in favor of BeautiControl. BeautiControl cross-appeals, arguing that the district court erred in denying BeautiControl's motion for attorney's fees and costs.

We affirm the district court's decision to grant summary judgment in favor of BeautiControl on Ms. Hale's claims of tortious interference. BeautiControl's actions with regard to beauti.com and Ms. Hale were lawful and justified such that summary judgment in favor of BeautiControl was proper. We also affirm the district court's denial of Ms. Hale's motion to alter or amend the judgment, as the discovery issues addressed in that motion could and should have been raised prior to the summary judgment decision. However, we remand the case for further proceedings on the issue of attorney's fees and costs because, in denying BeautiControl's motion, the district court relied exclusively on a Michigan Court Rule that has been materially amended.

I.

Sherry Hale sold cosmetics from 1990 to 2002 as an "independent consultant" for BeautiControl, a company employing "multi-level direct marketing" to sell beauty and skin care products. Ms. Hale's dispute with BeautiControl revolves around a website, "beauti.com," that she set up in 1997 to advertise her BeautiControl business on the internet. The website was a "host" that

allowed consultants to link a personal page to Ms. Hale's site. Beauti.com would direct BeautiControl customers to the web-page of a consultant in the customer's area based on a zip-code search. The consultants paid a registration fee to Ms. Hale for linking their pages to hers and for access to password-protected areas of Ms. Hale's site.

Ms. Hale received permission from BeautiControl for these activities through her BeautiControl directors, initially Sheila Osbourne and later Ruth Connor. Ms. Hale's directors submitted the website to BeautiControl employees Gary Galindo and Evelyn Browning for approval at various times. BeautiControl approved the website orally in 1998, but Ms. Hale never received written permission to establish the website or to use BeautiControl's trademarks on the website. Apparently, BeautiControl encouraged Ms. Hale for a time. However, BeautiControl revoked its approval for the website and its permission to use BeautiControl trademarks in March of 1999, approximately the same time that BeautiControl was launching its own website, "beautinet.com." BeautiControl informed Ms. Hale that her website was not authorized. BeautiControl requested, pursuant to Ms. Hale's independent consultant agreement, that Ms. Hale cease using the trademark "BeautiControl" on her website.[1] BeautiControl also sent letters and e-mails to the consultants advertising on Ms. Hale's site, admonishing them not to advertise on "unauthorized" websites.

---

[1]Paragraph four of the independent consultant agreement states, "To protect my BeautiControl business and the Company from false, deceptive, or misleading advertising, I agree not to use the Company's trademarks or trade names in any type of advertising . . . or literature . . . without the Company's prior written permission." Ms. Hale argues that this language was not included in the 1990 version of the consultant agreement she signed. However, she does not cite a copy of the 1990 consultant agreement, and an undated copy of the BeautiControl consultant agreement included in the record contains the language quoted above.

BeautiControl employees also accessed Ms. Hale's website, including password-protected areas, to monitor the site and later to determine compliance with the company's request that she cease using its trademarks.

After BeautiControl admonished its consultants not to use unauthorized websites, beauti.com suffered a decline in membership. Eventually, BeautiControl established a very similar host website in 2000, beautipage.com. Ms. Hale attempted to resurrect her website in different forms, but after facing resistance from BeautiControl, Ms. Hale filed suit on May 29, 2002, in Michigan state court. Ms. Hale alleged that BeautiControl had tortiously interfered with her contracts with beauti.com subscribers, and had tortiously interfered with her prospective business relationships with subscribers by contacting BeautiControl consultants and warning them not to use unauthorized websites.

After the case was removed to federal court, in September of 2002 the district court entered an order, pursuant to the parties' recommendation, submitting the dispute to "case evaluation" under Michigan Court Rule 2.403. As the mediation and discovery processes proceeded, BeautiControl moved for summary judgment on June 9, 2003, the deadline set by the district court for the filing of dispositive motions. The mediation, held later in June, resulted in a unanimous award by the mediation panel of $50,000 in favor of Ms. Hale, which she rejected by not filing a timely acceptance. Ms. Hale continued to conduct discovery in the case, requesting several extensions of the discovery deadline, and filed an opposition to BeautiControl's summary judgment motion. In late July of 2003, Ms. Hale retained new counsel, who sought to complete discovery and resolve Ms.

Hale's outstanding discovery requests by the August 31, 2003, discovery deadline. Specifically, Ms. Hale was seeking to obtain certain documents from BeautiControl and to depose three BeautiControl employees in Texas.

On October 7, 2003, before BeautiControl completed the document production or Ms. Hale deposed the three employees, the district court granted summary judgment in favor of BeautiControl. Regarding Ms. Hale's claims of tortious interference, the district court found that Ms. Hale failed to demonstrate that BeautiControl acted tortiously in revoking its permission to use its trademarks on Ms. Hale's website, and that the legitimate business interest BeautiControl had in enforcing the consultancy agreement with Ms. Hale justified sending the letters and e-mails to her customers urging them not to do business with her. The district court also rejected Ms. Hale's request that summary judgment be postponed to allow further discovery, noting that Ms. Hale failed to file an affidavit explaining the need for further discovery as required by Federal Rule of Civil Procedure 56(f).

Ms. Hale then moved under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment. Ms. Hale sought additional time for discovery. In the alternative, she sought to present additional evidence collected in discovery subsequent to filing her opposition to summary judgment, and additionally to re-instate her claims of tortious interference. Ms. Hale argued that even though a Rule 56(f) affidavit was not filed, such affidavits are generally only required after discovery has closed, and in her case the summary judgment briefing occurred in advance of the close of discovery. Ms. Hale also argued that the district court erred by imposing too broad a definition of

legitimate conduct under the Michigan law of tortious interference. The district court rejected both arguments.

BeautiControl, having successfully defended Ms. Hale's suit, filed a motion for attorney's fees and costs pursuant to the Michigan court rule under which the mediation was conducted. *See* MICH. CT. R. 2.403(O)(1). The district court rejected the request, relying on Sixth Circuit precedent that had held that in order to be entitled to attorney's fees and costs under that provision a party must have filed a summary judgment motion *after* the mediation panel reaches a conclusion. *Johnson v. Fruit Belt Elec.*, Nos. 93-1932 & 93-2442, 1995 WL 6227 (6th Cir. Jan. 5, 1995). Ms. Hale now appeals the district court's decision to grant BeautiControl's motion for summary judgment and to deny her motion to alter or amend the judgement. BeautiControl cross-appeals the district court's decision to deny its motion for attorney's fees and costs.

II.

Summary judgment in favor of BeautiControl on Ms. Hale's claims of tortious interference was proper because she cannot establish that BeautiControl's actions were either per se wrongful or malicious and unjustified in law. *See Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984). We review the grant of summary judgment de novo. *United Rentals (N. Am.), Inc. v. Keizer*, 355 F.3d 399, 405 (6th Cir. 2004). Further, while a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) is generally reviewed for abuse of discretion, to the extent the motion seeks reconsideration of a grant of summary judgment, the denial of the motion is reviewed

de novo. *Columbia Gas Transmission Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir. 1991). Summary judgment is proper if "there is no genuine issue as to any material fact" such that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c).

In this diversity action, Michigan's substantive tort law applies to the dispute. *Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 644 (6th Cir. 1996). To establish tortious interference with contract under Michigan law, a plaintiff must show: (1) a contract between plaintiff and a third party; (2) a breach of that contract; and (3) that the breach was unjustifiably instigated by the defendant. *Badiee v. Brighton Area Sch.*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005); *Mahrle v. Danke*, 549 N.W.2d 56, 60 (Mich. Ct. App. 1996). To establish tortious interference with a business relationship, a plaintiff must show: (1) a valid business relationship or expectancy; (2) that the defendant was aware of the relationship or expectancy; (3) that the defendant's intentional interference induced or caused a breach or termination of the relationship or expectancy; and (4) damage to the plaintiff. *Badiee*, 695 N.W.2d at 538. Although similar, these torts are distinct, as a cause of action for tortious interference with a business relationship or expectancy does not require the plaintiff to demonstrate a contractual relationship with the third party. *Bonelli v. Volkswagen of Am., Inc.*, 421 N.W.2d 213, 220 n.4 (Mich. Ct. App. 1988).

The third element of each tort requires the plaintiff to demonstrate that the third party was induced either to breach the contract or to break off the prospective business relationship by an intentional act that is either: (1) wrongful per se; or (2) lawful, but done with malice and unjustified in law. *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 649 N.W.2d 808, 812 (Mich. Ct. App. 2002);

*Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984). "Under the latter instance, [a] plaintiff necessarily must demonstrate, with specificity, affirmative acts by the [defendant] which corroborate the unlawful purpose of the interference." *Id.* at 886. Ms. Hale relies on three acts by BeautiControl to demonstrate the unlawful purpose of the interference and thereby establish the third element of each tort: (1) BeautiControl's decisions to revoke its approval for Ms. Hale's website and to revoke its permission for Ms. Hale to use its trademarks on a website; (2) the letters and e-mails sent by BeautiControl to Ms. Hale's subscribers informing them not to use her site; and (3) the viewing, with a borrowed password, of the protected areas of Ms. Hale's website allegedly to obtain information on the design of the website and the identity of her subscribers. Individually or collectively, these actions were not malicious and unjustified in law, nor do these actions demonstrate the unlawful purpose of BeautiControl's interference.

BeautiControl's revocation of its approval for Ms. Hale's website and its refusal to allow Ms. Hale to use BeautiControl trademarks were justified and do not constitute tortious interference. It is undisputed that Ms. Hale was not granted written approval for her website, nor did BeautiControl license the use of its trademarks to her for the website. This case is unlike *Bonelli v. Volkswagen of America, Inc.*, 421 N.W.2d 213 (Mich. Ct. App. 1988), where the plaintiff successfully sued for tortious interference. In that case, a third party gave the plaintiff a written, exclusive license to sell posters bearing certain trademarks. *Id.* at 216-17. The third party also gave the defendant a written license to use the trademarks to market automobiles. *Id.* at 217. As part of the marketing effort, the defendant began giving away posters bearing the trademarks. *Id.* at 219. The plaintiff successfully

sued the defendant for tortious interference based on the plaintiff's written license, which gave the plaintiff the exclusive right to market posters and impliedly prohibited the defendant from creating and distributing a similar poster.

In this case, there is no binding agreement giving Ms. Hale the right to create and market a website using BeautiControl's trademarks. There is also no agreement limiting BeautiControl's ability to create and market a competing website. As a result, BeautiControl was under no obligation, express or implied, to grant Ms. Hale permission for her website, to allow her to use its trademarks on a website of her design, to refrain from revoking permission previously given, or to refrain from creating a competing website that displaced Ms. Hale's. Therefore, BeautiControl's decisions to revoke its approval for Ms. Hale's website and to deny Ms. Hale the right to use BeautiControl's trademarks on her website do not constitute tortious interference.

The letters and e-mails that BeautiControl sent to the consultants who had linked to Ms. Hale's website did not constitute tortious interference because BeautiControl was exercising valid contractual control over its consultants. It is undisputed that BeautiControl exercised substantial control over the activities of its consultants. Much of Ms. Hale's brief goes to disparaging the business model employed by BeautiControl, but BeautiControl's contractual power over its consultants is not illegal or unlawful. The Restatement of Torts, cited with approval by the Michigan courts, notes the relationship between the parties as a factor in considering whether the defendant's actions constitute tortious interference. *Jim-Bob, Inc. v. Mehling*, 443 N.W.2d 451, 463 (Mich. Ct. App. 1989) (citing other factors listed in RESTATEMENT (SECOND) OF TORTS § 767

(1979)). BeautiControl consultants were expressly prohibited from using the company's trademarks or trade names without written authorization. *See* n.1, *supra*. Thus, to the extent that Ms. Hale's website continued to violate the terms of her consulting agreement by using BeautiControl's trade name and trademarks without authorization, the consultants using the site would be complicit in that misuse. By simply enforcing its contract with its consultants, BeautiControl's behavior was not malicious.

Finally, Ms. Hale presents no evidence that BeautiControl accessed Ms. Hale's website for the purpose of stealing her customers or her ideas. In the context of two independent competitors, analogous actions have been found to constitute tortious interference. *See Monette v. AM-7-7 Baking Co.*, 929 F.2d 276, 283 (6th Cir. 1991) (tortious interference found when the defendant accompanied the plaintiff on his sales route under the pretext of helping him increase sales, but instead compiled a list of the plaintiff's customers and used the customer list to assume the plaintiff's route). However, taken in the light most favorable to Ms. Hale, the evidence only demonstrates that a BeautiControl employee accessed Ms. Hale's website at one time, and does not show that the motive for accessing the website was tortious. Further, beauti.com was submitted to BeautiControl for approval and consultants who linked to Ms. Hale's site had to get approval from BeautiControl before linking their websites to Ms. Hale's, making the access to the site by a BeautiControl employee unnecessary to discover either the content of the site or Ms. Hale's customers. J.A. at 586-87.

III.

The district court did not abuse its discretion in denying Ms. Hale's motion to alter or amend the judgment to allow her to complete discovery. The denial of a Rule 59(e) motion to alter or amend a district court determination other than a grant of summary judgment is reviewed for abuse of discretion. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Motions for reconsideration under Rule 59(e) may be granted if there is a clear error of law, newly discovered evidence, a change in controlling precedent, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

Ms. Hale challenges the district court's grant of summary judgment prior to the completion of discovery. We see no error in the district court's actions. The district court was entitled to rule on a motion for summary judgment before the close of discovery if Ms. Hale could not show how further discovery would enable her to rebut the movant's showing of an absence of a genuine issue of fact. *See United States v. Miami Univ.*, 294 F.3d 797, 815-16 (6th Cir. 2002). Ms. Hale has offered no adequate justification for ordering further discovery because she has not explained what material facts more discovery would uncover. Therefore, the district court's decision to grant summary judgment before the close of discovery did not amount to a manifest injustice warranting relief under Rule 59(e).

IV.

The district court, however, erred in relying on *Johnson v. Fruit Belt Electric*, Nos. 93-1932 & 93-2442, 1995 WL 6227 (6th Cir. Jan. 5, 1995), to deny BeautiControl's motion for attorney's

fees and costs. The *Johnson* case was based on a version of the Michigan Court Rules that has since been amended. *Compare id* at \*7 (quoting previous language), *with* MICH. CT. R. 2.403(O)(2)(c); W.D. MICH. LOCAL CIV. R. 16.5. Therefore, we remand for further consideration the district court's decision to deny BeautiControl's motion for attorney's fees and costs.

Ms. Hale and BeautiControl agreed to "case evaluation," a form of alternative dispute resolution, to be conducted under Michigan Court Rule 2.403. The Michigan rules for case evaluation provide for attorney's fees and costs if a party rejects the proposed award following the case evaluation and proceeds to trial, but fails to obtain a verdict more favorable than the award. MICH. CT. R. 2.403(O)(1); W.D. MICH. LOCAL CIV. R. 16.5(h). The prior version of Michigan Court Rule 2.403(O)(2)(c) defined "verdict" to include, "a judgment entered as a result of a ruling on a motion filed after mediation." *Johnson*, 1995 WL 6227 at \*7. The court in *Johnson* determined that attorney's fees were inappropriate because the successful summary judgment motion was filed before the case evaluation was completed. Therefore, the definition of "verdict" under the Michigan Court Rule precluded the imposition of attorney's fees.

Subsequently, the definition of verdict was amended by the Michigan Supreme Court to include, "a judgment entered as a result of a ruling on a motion after rejection of the case evaluation." MICH. CT. R. 2.403(O)(2)(C). On appeal, Ms. Hale does not contest that the removal of the word "filed" from the definition of verdict renders the holding of *Johnson* inapplicable.

It remains to be determined whether under the facts of this case an award of attorney's fees

is permissible. *Compare Tiedel v. Northwestern Michigan Coll.*, 865 F.2d 88, 93-94 (6th Cir. 1988)

*with Mencer v. Princeton Square Apartments*, 228 F.3d 631, 636 (6th Cir. 2000). We leave that

determination for the district court in the first instance.

V.

Based on the foregoing, we AFFIRM the district court's decisions to grant of summary

judgment in favor of BeautiControl and to deny Ms. Hale's motion to alter or amend the judgment,

but REMAND the district court's denial of BeautiControl's motion for attorney's fees and costs for

further consideration.